Larry and Lynda HUTCHINGS, Plaintiffs-Appellants,

v.

BENEFICIAL FINANCE COMPANY OF OREGON, Defendants-Appellees.

No. 79–4495.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 3, 1981.

Decided May 26, 1981.

Rehearing Denied Sept. 8, 1981.

Cathy Kmiec, Betty Shadoan, Law Students, Portland, Or., for plaintiffs-appellants.

Cleveland C. Cory, Davies, Biggs, Strayer, Stoel & Boley, Portland, Or., for defendants-appellees.

Before ANDERSON and CANBY, Circuit Judges, and CRAIG, Senior District Judge.*

CANBY, Circuit Judge.

Appellants, Larry and Lynda Hutchings, sued American Film Services and appellee, Beneficial Finance Co., for alleged violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, and Regulation Z, 12 C.F.R. § 226. The district court granted judgment in favor of Beneficial, and the Hutchings appealed. We affirm.

### FACTS

The Hutchings executed a retail installment contract to purchase movie equipment from American Film. The contract stated that the deferred payment price was $859.66, when in fact it was $859.76. The contract also stated that the seller reserved a purchase money security interest in the goods sold, and that the contract would be sold to Beneficial, which would then be the customer's creditor. The contract was assigned to Beneficial by American Film.

Under the master agreement between American Film and Beneficial, Beneficial drafted the printed portions of the retail installment contracts used by American Film. The contracts were filled out by American Film employees. Beneficial held classes to teach those employees how to fill out the contracts, and supplied them with charts to compute the interest rate, finance charge, and number of payments for each sale. After the contracts were completed, they were forwarded to Beneficial. A Ben-

---

* The Honorable Walter E. Craig, United States District Judge, for the District of Arizona, sitting by designation.

eficial employee checked the deferred payment price by adding machine, and fed the other credit information into a computer for verification and future reference.

## DEFERRED PAYMENT PRICE

 Regulation Z requires creditors to disclose the deferred payment price for credit sales. 12 C.F.R. § 226.8(c)(8)(ii). Failure to disclose the deferred payment price, therefore, is a violation of the Truth in Lending Act. *Walker v. College Toyota, Inc.*, 519 F.2d 447, 447 (4th Cir. 1975). Understatement of the deferred payment price, even a clerical error of 10 cents, also violates the Act. *See Harris v. Tower Loan, Inc.*, 609 F.2d 120, 123 (5th Cir.), *cert. denied,* —— U.S. ——, 101 S.Ct. 89, 66 L.Ed.2d 30 (1980) (understatement of the finance charge); *Mirabal v. General Motors Acceptance Corp.*, 537 F.2d 871, 877 (7th Cir. 1976), *cert. denied*, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 699 (1978) (understatement of the annual percentage rate). The Act, however, provides creditors with a defense for clerical errors. The issue is whether Beneficial maintained "procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1640(c); *Ives v. W. T. Grant Co.*, 522 F.2d 749, 757 (2d Cir. 1975).

The district court's second finding of fact stated that Beneficial had

shown by a preponderance of the evidence that the 10-cent error made in the computation of "DEFERRED PAYMENT PRICE," on the face of the Disclosure Statement (plaintiffs' Ex 1), was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures by Beneficial Finance Company of Oregon reasonably adapted to avoid any such error.

We note that this "finding of fact" merely traces the statutory language of § 1640(c), and thus is more properly viewed as a conclusion of law. *See Tri-Tron International v. Velto*, 525 F.2d 432, 435 (9th Cir. 1975). Our review of the record convinces us that this conclusion is correct.

 The Act does not specify the type of system a creditor must maintain to avoid liability.

Congress left the exact nature of the [checking] mechanism undefined. It is clear, however, that Congress required more than just a showing that a well-trained and careful clerk made a mistake. On the other hand, a showing that the first well-trained clerk's figuring was checked by a second well-trained clerk or that one clerk made the calculations on an adding machine and then checked this by looking up the figures on a table would satisfy Congress' requirements.

*Mirabal v. General Motors Acceptance Corp.*, 537 F.2d at 878–79. Judged by this standard, Beneficial's system of reviewing the deferred payment price in its contracts meets the requirements of § 1640(c). An American Film employee trained by Beneficial calculated the deferred payment price with the help of a chart prepared by Beneficial. A Beneficial employee double-checked this calculation by adding machine. We agree with the district court that such a system is reasonably designed to avoid clerical errors. The Act does not require a creditor to verify arithmetic by computer.

## SECURITY INTEREST

[4] The Truth in Lending Act requires creditors to disclose any security interest held in connection with the extension of credit. 15 U.S.C. § 1638(a)(10). Specifically, the creditor must describe the type of security interest and the property to which it attaches. *Id.*; 12 C.F.R. § 226.8(b)(5). The contract in this case stated that the seller reserved a purchase money security interest in the goods sold until the price was paid in full. This statement adequately described the type of security interest reserved, and the property to which it attached. *Grant v. Imperial Motors*, 539 F.2d 506, 509 (5th Cir. 1976).

 The Hutchings argue, however, that the failure of the contract to explain that the security interest held by the seller would be transferred to Beneficial along with the contract violates the Act. We disagree. The contract in this case stated that after the contract was sold, Beneficial would be the customer's creditor, and that any questions about payment should be directed to Beneficial. We think that the

contract adequately identified Beneficial's relationship to the transaction. *See Sharp v. Ford Motor Credit Co.*, 615 F.2d 423, 426 (7th Cir. 1980); *Milhollin v. Ford Motor Credit Co.*, 588 F.2d 753, 757 (9th Cir. 1978), *rev'd on other grounds*, 444 U.S. 555, 100 S.Ct. 760, 63 L.Ed.2d 22 (1980). The Act's requirements must be read in light of its general purpose—to produce meaningful disclosure of credit terms by anticipating any reasonable questions which consumers might have. *Madison v. United Finance Co.*, 571 F.2d 1125, 1126 (9th Cir. 1978); *Pennino v. Morris Kirschman & Co.*, 526 F.2d 367, 372 (5th Cir. 1976). We fail to see how the specific wording urged by the Hutchings would make the disclosure any more meaningful to consumers than it already is.

AFFIRMED.