NATHAN LANE ASSOCIATES, L.L.P. and Marmax, Inc. d/b/a Minter Weisman-quad Cities Division, Appellees,

v.

MERCHANTS WHOLESALE OF IOWA, INC. and Merchants Wholesale, Inc., Appellants.

No. 03–0128.

Supreme Court of Iowa.

May 20, 2005.

Rehearing Denied June 29, 2005.

---

Robert V.P. Waterman, Jr. and Thomas D. Waterman of Lane & Waterman, Davenport, and Hugh C. Griffin and Dale T. Miller of Lord, Bissell & Brook, Chicago, IL, for appellants.

Joseph C. Creen of Bush, Motto, Creen & Koury, PLC, Davenport, and William R. Skolnick of Skolnick & Associates, P.A., Minneapolis, MN, for appellees.

LARSON, Justice.

Merchants Wholesale of Iowa, Inc. was lessee under a sublease on a large commercial storage building in Davenport, Iowa. The lessors, Nathan Lane Associates, L.L.P. and Marmax, Inc. (collectively Marmax), sued Merchants and its guarantor, Merchants Wholesale, Inc. (collectively Merchants), alleging breach of the lease terms and demanding damages. The district court entered a judgment for the plaintiff for over $940,000, consisting largely of double rent for "holding over" after the termination of the lease. Merchants appealed, and the court of appeals affirmed in part and reversed in part. We vacate the decision of the court of appeals, reverse the judgment of the district court, and remand.

## I. *Facts and Prior Proceedings.*

Before Merchants became involved in this lease, Marmax had been in the grocery-packing business for many years, leasing this commercial warehouse from Nathan Lane Associates. In 1995 Marmax installed a three-story racking and overhead conveyor system, described as having a "very special use" for transporting grocery-type merchandise throughout the warehouse. Marmax subsequently sold its Davenport business and subleased the building to Merchants. Merchants also leased (with an option to buy) personal property on the premises, including the racking and conveyor system.

In December 2000 Marmax and Merchants entered into a new one-year sublease. The parties also executed a personal-property purchase agreement (PPPA), under which Merchants agreed to pur-

chase the previously leased personal property for $460,000.

Under the terms of the sublease, Merchants could terminate the sublease before the end of its one-year term if Merchants was financially unable to remain in business, provided it had paid in full for the personal property purchased under the PPPA. Merchants paid the balance due under the PPPA in March 2001. On May 3, 2001, it sent a written notice of its intent to terminate the lease in ninety days.

On August 2, 2001, Marmax's lawyer wrote to Merchants' lawyer:

> In accordance with your own client's notice of early termination, Friday, August 3, 2001, by the end of business *Merchants Wholesale is no longer on the subject premises with the permission of [Marmax] or anyone authorized to act on their behalf.* There was ample opportunity for Merchants Wholesale and its owner to voluntarily cure the numerous outstanding defaults as set forth more specifically in my prior letters and to make arrangements beyond August 3, 2001, that may have been acceptable then to my clients.

(Emphasis added.) The lawyer detailed several alleged defaults by Merchants, including failure to properly maintain and repair a freezer, failure to maintain the grounds, and failure to pay attorney fees. Pursuant to Marmax's letter of August 2, Merchants was excluded from the property, and on August 4, Marmax changed the locks on the building. Marmax immediately listed the building for sale.

On September 11, 2001, Marmax sued Merchants, alleging it breached the sublease by holding over, based on Merchants' failure to remove the personal property and its failure to restore the premises. Prior to the court's final decision awarding Marmax the damages now on appeal, the court entered a summary judgment against Merchants, ordering it to pay the expenses of removing the personal property and cleaning the premises. It is undisputed that Merchants has paid those costs.

## II. *Resolution.*

■ A. *Standard of review.* Our review of this law action is for the correction of errors at law. Iowa R.App. P. 6.4. The district court's findings of fact have the effect of a jury verdict, and we are bound by them if they are supported by substantial evidence, i.e., evidence that a reasonable mind would accept as adequate to reach the same findings. *Hendricks v. Great Plains Supply Co.,* 609 N.W.2d 486, 490 (Iowa 2000). We are not, of course, bound by the district court's application of the law.

■ B. *Personal property left behind on a leased premises.* Failure of an outgoing tenant to remove personal property may, under some circumstances, constitute a holdover. *See* 52A C.J.S. *Landlord & Tenant* § 712, at 78 (2003); Milton R. Friedman, *Friedman on Leases* § 18.4, at 1237–38 (4th ed. 1997) [hereinafter *Friedman on Leases*]; *see also* Tracy A. Bateman, Annotation, *What Constitutes Tenant's Holding Over of Leased Premises,* 13 A.L.R.5th 169 §§ 9–10, at 192–210 (1993) (summarizing cases in which holdover was alleged because tenant left property on the premises after the termination of the lease).

■ In this case, the district court correctly observed that, ordinarily, it is a question of fact whether a tenant has held over by failing to remove its property at the end of the lease. *See Nehi Bottling Co. v. All–Am. Bottling Corp.,* 8 F.3d 157, 163 (4th Cir.1993); *Friedman on Leases* § 18.4, at 1238. The district court, after considering the racking and conveyor system's sheer size, concluded that the system

severely hindered Marmax's right to take possession and thus constituted a holdover. We do not agree. Marmax, from August 4, 2001, was in control of the premises by excluding Merchants from it. Marmax was free to remove Merchants' property and, in fact, ultimately did so at Merchants' expense.

■ It is axiomatic that, if a party does not have the right to possession, the concomitant duty to pay rent does not arise. Here, Marmax—not Merchants—had the right of possession. *See LIC, Inc. v. Baltrusch*, 215 Mont. 44, 692 P.2d 1264, 1266 (1985) (holding that landlord repossessed premises when it changed the locks to the buildings); *see also Deeb v. Canniff*, 29 Colo.App. 510, 488 P.2d 93, 95 (1971) ("[T]he general rule [is] that a re-entry by the landlord ... which materially disturbs the possession of the tenant constitutes an eviction and terminates the lease. [The lessor's] conduct in changing the locks and evicting Canniff under the undisputed facts in this case terminated the lease...." (Citations omitted.)); *Warren v. Yocum*, 223 N.W.2d 258, 260 (Iowa 1974) ("Possession involves power of control and intent to control, and all the definitions contained in recognized law dictionaries indicate that the element of custody and control is involved in the term 'possession.'" (Internal quotations omitted.)).

By reentering the premises and taking possession, Marmax effectively prevented any holdover tenancy as a matter of law. *See* Restatement (Second) of Property: Landlord and Tenant § 1.2 (1977) ("A landlord-tenant relationship exists only if the landlord transfers the right to possession of the leased property."). Without possession, Merchants could not be a tenant, and therefore, it was not liable for rent. Instead, from August 4 on, Merchants was at most a trespasser.

The Alaska Supreme Court, in considering a similar factual scenario, reached the same result. *See Brown v. Music, Inc.*, 359 P.2d 295 (Alaska 1961). In *Brown* the tenant leased a restaurant from Music, Inc. and also agreed to purchase some of Music's equipment already on the premises. However, just a few months later, Brown discontinued his restaurant business and stopped paying rent. After two months of nonpayment, Music terminated the lease and ordered Brown to vacate the premises and remove all personal property. Brown removed some property, but not all of it. *Id.* at 296.

Music informed Brown that, if he did not remove the remaining property, Music would charge rent for the space it occupied. After several months, Music finally moved the equipment off the premises and into storage. It then sued Brown for rent due while the equipment was stored at the restaurant. *Id.*

After reviewing the law regarding holdovers and tenancies at sufferance, the Alaska court stated:

These facts plainly indicated that Music did not treat Brown as a lessee holding over from month to month beyond the termination of the lease. Its actions are inconsistent with the idea of a continuing tenancy. The lease was clearly terminated by Music, and at that moment the relationship of landlord and tenant with its attendant obligations ceased. It could not be revived by Music's unilateral action, as expressed in its notice to Brown ..., that it would charge Brown "rent for storage space" if he did not move certain personal property within the specified time. If Music were deprived of the use of a portion of its building by reason of Brown's failure to remove the property, then Brown was a

trespasser, possibly liable for damages suffered by the landlord. *Id.* at 297 (footnote omitted).

Music claimed that, regardless of Brown's status as a trespasser, Music was entitled to "[d]amages resulting from [Brown's] failure to surrender possession of the leased premises . . ., i.e., their rental value during the period of wrongful possession." *Id.* at 298. The court conceded that rental value is typically the proper remedy when a tenant fails to surrender possession. However, Brown was not actually in possession. *Id.* This fact, according to the court, defeated Music's claim for rent. *Id.* at 299.

In this case, we believe it was error to award damages for rent. Because Marmax reclaimed possession of the premises, Marmax was entitled to, at most, damages for trespass caused by Merchants' leaving its personal property behind. *See Nichols v. City of Evansdale,* 687 N.W.2d 562, 573 (Iowa 2004) (stating that damages for trespass are measured either by the diminution of value to the premises caused by the presence of the defendant's personal property or the costs incurred in removing such property); Restatement (Second) of Property: Landlord and Tenant § 12.3 cmt. k (stating that landlord may recover from tenant the cost of removing and storing personal property left behind).

Marmax has cited no cases, and we have found none, that have allowed double rent—or any rent at all for that matter—under circumstances in which the former tenant is denied possession of the premises. *Leslie Pontiac, Inc. v. Novak,* 202 N.W.2d 114 (Iowa 1972), cited by the district court and Marmax, is distinguishable. That case allowed ordinary rent for the period of holdover, but denied double rent. *Leslie Pontiac,* 202 N.W.2d at 116–17. While that case allowed actual rent, the tenant had maintained actual possession of the property following termination of the lease. *Id.* at 115. That is not the case here.

We reverse the judgment against Merchants insofar as it included ordinary and double rent. Other damage issues raised below, including, but not limited to, any unpaid costs associated with the removal of Merchants' property (as to which the appellate record is not clear) and Merchants' claim for a tax refund being held by Marmax, cannot be resolved on this appeal. Accordingly, we remand for entry of a new judgment, consistent with this opinion, and based on the existing record.

**DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT REVERSED; CASE REMANDED.**