**CHRYSLER FINANCIAL COMPANY, Appellee,**

v.

**Jon BERGSTROM, Appellant.**

No. 04–0582.

Supreme Court of Iowa.

Sept. 9, 2005.

Ray Johnson of Johnson Law Firm, West Des Moines, for appellant.

Becky J. Petersen and Phil Watson of Phil Watson, P.C., Des Moines, for appellee.

CADY, Justice.

The Iowa Consumer Credit Code provides remedies for Iowa consumers against creditors who violate certain provisions of the Code. *See* Iowa Code §§ 537.5201–.5203 (2003). This appeal concerns a violation involving filing a lawsuit against a consumer in the wrong venue and the statutory defense that relieves the creditor of liability for the violation if the creditor shows the violation was unintentional and was the result of a bona fide error that occurred even though the creditor had a procedure in place "reasonably adapted to avoid the error." *Id.* § 537.5201(7). We vacate the decision of the court of appeals and affirm the decision of the district court.

## I. Background Facts and Proceedings

Jon Bergstrom leased a vehicle from Chrysler Financial Company in 1997. He

subsequently fell behind on his lease payments, and Chrysler gave him notice of his right to cure the default. *See id.* § 537.5110 (providing for consumer's right to cure default and stating that giving notice of the right to cure default is a prerequisite to suit); *id.* § 537.5111 (requiring creditor to give consumer notice of right to cure default). Bergstrom did not cure the default within the time he was allowed to cure. *See id.* (stating consumer has twenty days from receiving notice of the right to cure to pay the delinquency). Thus, Chrysler accelerated the debt, sold the vehicle following repossession, and filed an action against Bergstrom for a deficiency judgment of $7690.46.

Under the consumer credit code, Chrysler was required to bring the action in the county of Bergstrom's residence. *Id.* § 537.5113. Bergstrom resided just outside Riceville, Iowa, but Riceville was his designated city of residence.

Riceville is located on the border of Howard and Mitchell Counties in northeast Iowa. The western portion of Riceville is in Mitchell County, and the eastern portion of Riceville is in Howard County. Bergstrom lives near the portion of Riceville that lies in Mitchell County. However, Chrysler filed the action in Howard County.

Bergstrom filed a motion for a change of venue to Mitchell County and requested attorney fees and costs for the motion. Chrysler consented to transferring the case to Mitchell County. However, it contested Bergstrom's claim for attorney fees and costs on the basis that it "exercised due diligence in attempting to ascertain the proper venue, the error was harmless and the Defendant was not unduly prejudiced" by the mistake. The district court in Howard County transferred the case to Mitchell County, ordered Chrysler to pay Bergstrom's court costs, and held the issue of attorney fees in abeyance.

After the transfer to Mitchell County, Bergstrom filed an answer to Chrysler's petition, along with a counterclaim. The counterclaim alleged Chrysler violated the consumer credit code by bringing the action in the wrong county. It sought, among other items, statutory damages under Iowa Code section 537.5201.[1] Chrysler replied to Bergstrom's counterclaim, asserting that its violation of the consumer credit code was not intentional and resulted from a bona fide error. On that basis, it claimed it could not be held liable for statutory damages. The case proceeded to a bench trial.

The district court ultimately entered a deficiency judgment for $7690.46 for

---

1.  Bergstrom asserted that Chrysler's filing the action in the wrong county was a prohibited debt collection practice under Iowa Code section 537.7103(1)(*f*). Section 537.7103(1)(*f*) prohibits any "action prohibited by this chapter or any other law." Because filing an action against a consumer in the wrong county is prohibited under section 537.5113, which is in chapter 537, Bergstrom claimed Chrysler's action constituted a prohibited debt collection practice. *See id.* § 537.7103(1)(*f*). Bergstrom needed to weave this extra layer into his argument in order to claim statutory damages from Chrysler. Section 537.5201 provides that a consumer may recover damages between one hundred and one thousand dollars from a creditor who has committed certain violations of the consumer credit code. *Id.* § 537.5201(1). The section provides a list of twenty-seven violations for which statutory damages are recoverable. *Id.* § 537.5201(1)(*a*)-(*aa*). Bringing an action in the wrong county, in violation of section 537.5113, is not a violation enumerated on the list. *Id.* However, "unfair debt collection practices under section 537.7103" are on the list. *Id.* § 537.5201(1)(*y*). Pursuant to this analysis, we have held that statutory damages are available for filing a consumer credit action in the wrong county, if such filing constitutes a violation of the consumer credit code. *See Monahan Loan Serv., Inc. v. Janssen,* 349 N.W.2d 752, 754 (Iowa 1984).

Chrysler against Bergstrom. However, the focus in this appeal is solely on Bergstrom's counterclaim against Chrysler. In response to the counterclaim, Chrysler presented evidence at trial of the filing practices and procedures of the Des Moines law firm it retained to initiate the action. Karen Brewer, a legal secretary at the firm, testified that she was responsible for preparing cases, including consumer credit cases, for filing. She was instructed that consumer credit cases were required to be filed in the county of the defendant's residence. The firm's procedure for ascertaining the defendant's county of residence was to consult the United States Postal Service (USPS) city-county directory. The directory provided a list of cities in Iowa and, next to each city, listed the county in which the city was located. Brewer had previously compared the listings in the USPS directory with those in a city-county directory she obtained from the Iowa Department of Transportation and found them to be identical. Brewer testified she had used the USPS directory "hundreds" of times to find the defendant's county and had never encountered a problem until this case. In this case, Brewer obtained Bergstrom's address from the Chrysler file, which showed Riceville as the city of his address. She then used the directory to ascertain his county of residence. The directory indicated Riceville was in Howard County.

The district court entered a deficiency judgment for Chrysler in the amount of $7690.46. It also found that the error of filing the lawsuit in the wrong county was unintentional and "constitute[d] a bona fide error pursuant to section 537.5201(7)." The court denied Bergstrom's counterclaim against Chrysler. It did, however, award Bergstrom attorney fees of $525 as costs incurred in changing venue. *See* Iowa R. Civ. P. 1.806.

Bergstrom filed a timely notice of appeal from the court's judgment denying his counterclaim. He did not appeal from the $7690.46 judgment entered against him by the district court. We transferred the case to the court of appeals. The court of appeals reversed the district court's judgment. It held that Chrysler's "bona fide error defense to the counterclaim should have failed as a matter of law" and remanded the case to the district court to determine the amount of statutory damages and attorney fees. We granted further review.

## II. Principles of Review

We review the judgment of a district court following a bench trial in a law action for correction of errors at law. *Wolf v. Wolf,* 690 N.W.2d 887, 892 (Iowa 2005). The district court's findings of fact have the force of a special verdict and are binding on us if supported by substantial evidence. *Nathan Lane Assocs., L.L.P. v. Merchants Wholesale of Iowa, Inc.,* 698 N.W.2d 136, 138 (Iowa 2005). Evidence is substantial if a reasonable person would accept it as adequate to reach a conclusion. *Hansen v. Seabee Corp.,* 688 N.W.2d 234, 238 (Iowa 2004) (citing *Arnevik v. Univ. of Minn. Bd. of Regents,* 642 N.W.2d 315, 318 (Iowa 2002)). " 'Evidence is not insubstantial merely because we may draw different conclusions from it; the ultimate question is whether it supports the finding actually made, not whether the evidence would support a different finding.' " *Fischer v. City of Sioux City,* 695 N.W.2d 31, 33–34 (Iowa 2005) (quoting *Raper v. State,* 688 N.W.2d 29, 36 (Iowa 2004)); *accord* 5 Am.Jur.2d *Appellate Review* § 666, at 340 (1995). In determining whether substantial evidence exists, we view the evidence in the light most favorable to the district court's judgment. *Gacke v. Pork Xtra, L.L.C.,* 684 N.W.2d 168, 179 (Iowa 2004). If the district court's "findings are ambiguous, they

will be construed to uphold, not defeat, the judgment." *Johnson v. Kaster,* 637 N.W.2d 174, 177 (Iowa 2001) (citing *Byers v. Contemporary Indus. Midwest, Inc.,* 419 N.W.2d 396, 397 (Iowa 1988)). Finally, if a district court fails to make a specific fact finding on an issue, and a party files a rule 1.904(2) motion requesting a finding on the issue, and the district court summarily denies the motion, we will assume the court found against the party on that issue. *See Kennedy v. State,* 688 N.W.2d 473, 478 (Iowa 2004).[2]

### III. Merits

It is a violation of the consumer credit code to institute an action against a consumer in the wrong county. Iowa Code § 537.5113. Yet, when a violation of the consumer credit code was not intentional and resulted from a bona fide error, a violator may avoid liability to a consumer under a standard established in section 537.5201(7), which is often referred to as the "bona fide error" defense. The section provides:

> A person may not be held liable in any action brought under this section for a violation of this chapter if the person shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid the error.

*Id.* § 537.5201(7).

The application of this standard requires that three questions be answered. *See id.* First, was the violation unintentional and the result of a bona fide error? *Id.* Second, if the violation was unintentional and resulted from a bona fide error, did the violator maintain a procedure to avoid the error? *Id.* Third, if the procedure was in place, was it reasonably adapted to avoid the error? *Id.*[3]

2. After discussing the evidence in its written ruling in this case, the district court specifically found the error in filing the lawsuit in the wrong county constituted "a bona fide error pursuant to section 537.5201(7)." Bergstrom filed a motion under Iowa Rule of Civil Procedure 1.904(2) following the district court decision. He argued there was no evidence to support a finding that Chrysler had a procedure in place that was reasonably adapted to avoid the error. The district court denied the motion, stating that "the issues raised by the motion were identical to the issues raised at trial, which led to the court's findings and conclusion." On appeal, Bergstrom argued that the district court did not make any finding under the "bona fide error" defense that the procedures used by Chrysler were reasonably adapted to avoid the error. Clearly, this background reveals the district court made the requisite finding when it concluded that the "bona fide error" defense pursuant to section 537.5201(7) was established. Consequently, the question on appeal is whether there was substantial evidence to support the finding.

3. Bergstrom argues that Chrysler must prove the additional element that the procedure was "maintained" over a period of time and was "followed time in and time out." He cites *Mirabal v. Gen. Motors Acceptance Corp.,* 537 F.2d 871, 879 (7th Cir.1976), *overruled on other grounds by Brown v. Marquette Sav. & Loan Ass'n,* 686 F.2d 608, 615 (7th Cir.1982), for this proposition. We decline to adopt the Seventh Circuit's definition of "maintenance" under the Truth in Lending Act. The consumer credit code does not define the word "maintenance." *See generally* Iowa Code ch. 537. Thus, we give the word its plain and ordinary meaning. *Nash Finch Co. v. City Council of City of Cedar Rapids,* 672 N.W.2d 822, 826 (Iowa 2003). We do not think the ordinary meaning of "maintenance" is "follow[ing] time in and time out." *Mirabal,* 537 F.2d at 879. Rather, we think it means, in the context of section 537.5201(7), "to have in place."

Moreover, even if we assume, *arguendo,* that a procedure must be followed time in and time out to satisfy the alleged "maintenance" element of the bona fide error defense, we find there is substantial evidence that the USPS directory was used time in and time out. Karen Brewer testified at trial that she "always" used the USPS directory proce-

■ The first question is fairly straight-forward. The inquiry is simply whether the violator intended to do the act that constituted a violation of the act, not whether the violator intended to violate the law. *Cf.* 47 C.J.S. *Interest & Usury* § 499, at 598 (2005) (construing the bona fide error defense in Truth in Lending Act, 15 U.S.C. § 1640(c), which contains language identical to Iowa Code section 537.5201(7)). Thus, in this case, the inquiry is whether Karen Brewer intended to file the lawsuit in the wrong county. "The determination of whether a violation was not intentional and resulted from a bona fide error is one of fact." *Id.* § 499, at 599. The district court found that she did not intend to file a lawsuit in the wrong county, and there is substantial evidence to support that finding. *See Nathan Lane Assocs., L.L.P.,* 698 N.W.2d at 138 (stating district court's findings are binding on appeal if supported by substantial evidence). Brewer testified at trial that she intended to file the action in the county of Bergstrom's residence. Thus, her intent was to follow the venue requirement of the consumer credit code. *See* Iowa Code § 537.5113.

In addressing the second question, it is important to understand that the error the procedure must be aimed at avoiding is the statutory violation at issue in the given case. In this case, the error at issue was the institution of the lawsuit against a consumer in the wrong county. *See id.* Thus, the question is whether Chrysler had a procedure in place to avoid suing a consumer in the wrong county. It is not whether the violator had a procedure in place to avoid suing, specifically, a consumer who lives in a community that extends into two or more counties in the wrong county. The existence of a procedure only

pertains to the code violation—suing a consumer in the wrong county. The district court found Chrysler had such a procedure in place, and there was substantial evidence to support this finding. The evidence was that a legal secretary verified the consumer's county of residence with the USPS city-county directory.

The third question, the fighting issue in this appeal, is whether the procedure maintained was reasonably adapted to avoid the error. Again, the focus is on whether the procedure was reasonably adapted to avoid the error that constituted a violation of the statute—in this case, institution of an action in the wrong county, not specifically avoiding this error in the context of a consumer who lives in a city straddling two counties. Thus, we must decide whether substantial evidence supports the district court finding that the USPS directory procedure was reasonably adapted to avoid suing a consumer in the wrong county. *See id.* § 537.5201(7).

The court of appeals held the procedure of using the USPS directory was not reasonably adapted to avoid suing a consumer in the wrong county as a matter of law because the directory only designated one county for each city and did not include information to show those cities that extended into multiple counties. In other words, the procedure did not eliminate all chances of avoiding the error.

The statute does not define "reasonably adapted." *See generally id.* ch. 537. Moreover, we have never interpreted the phrase. In *Monahan Loan Service Inc. v. Janssen,* 349 N.W.2d 752, 754 (Iowa 1984), we held that statutory damages were available for violating the consumer credit code for filing an action in the wrong county, but we did not have the opportunity to

dure to determine a consumer's county of residence, that she had used it "hundreds" of times, and that she never used any other method—she "just used that list."

address the elements of the bona fide error defense. Yet, in other contexts, we have said that questions of reasonableness are best resolved by the fact finder. *See St. Ansgar Mills, Inc. v. Streit,* 613 N.W.2d 289, 295 (Iowa 2000) ("Generally, the determination of the reasonableness of particular conduct is a jury question." (citing *Pirelli–Armstrong Tire Co. v. Reynolds,* 562 N.W.2d 433, 436 (Iowa 1997); *Harvey v. Great Atl. & Pac. Tea Co.,* 388 F.2d 123, 125 (5th Cir.1968)); *Hepp v. Zinnel,* 199 N.W.2d 68, 69 (Iowa 1972) ("[W]hat is 'reasonable' is not black or white. Such an issue is peculiarly for the fact finder." (citing *Appling v. Stuck,* 164 N.W.2d 810, 814 (Iowa 1969)); *cf. McIlravy v. N. River Ins. Co.,* 653 N.W.2d 323, 333 (Iowa 2002) (opining "reasonableness of the denial of a workers' compensation claim by an insurer" is ordinarily a question of fact); *State v. Arnold,* 543 N.W.2d 600, 604 (Iowa 1996) (stating "reasonableness or excessiveness of the punishment was a question for the jury" (citation omitted)); *Hoekstra v. Farm Bureau Mut. Ins. Co.,* 382 N.W.2d 100, 106 (Iowa 1986) (holding the question of whether insurance company's requests were "reasonable" under policy language was a fact question); *Zohn v. Menard, Inc.,* 598 N.W.2d 323, 326 (Iowa Ct.App.1999) ("The issue of the existence of reasonable grounds for detention by a shopkeeper is generally a question of fact for the jury." (Citation omitted.)); 1 Dan B. Dobbs, *The Law of Torts* § 148, at 354 (2001) (stating determining whether a risk was unreasonable is a jury function). There is no reason to approach the bona fide error defense in any other manner. *See Narwick v. Wexler,* 901 F.Supp. 1275, 1282 (N.D.Ill.1995) (addressing the bona fide error defense under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692k(c), which contains the same "reasonably adapted" language as section 537.5201(7), and observing, "[t]he inquiry into whether given procedures are reasonable is, by its nature, fact-intensive, and should therefore typically be left to the" fact finder). Thus, we must decide if there was substantial evidence of reasonableness. Our law has never considered reasonableness to be perfect or foolproof.

One common way to analyze whether a party's conduct is reasonable is to balance the utility of the party's act against the magnitude of the risk of harm to others. Restatement (Second) of Torts § 291, at 54 (1965). Thus, even if Chrysler should have foreseen that its procedure could result in a consumer being sued in the wrong county in those instances when a consumer resides in a city that spans two counties, the magnitude of the risk of harm must be considered to fully determine the reasonableness of the procedure. As the magnitude of the risk increases, so too should the degree of care required to avoid the risk. Factors to consider in determining the magnitude of the risk include:

> (a) the social value which the law attaches to the interests which are imperiled; (b) the extent of the chance that the actor's conduct will cause an invasion of any interest of the other ...; (c) the extent of the harm likely to be caused to the interests imperiled; (d) the number of persons whose interests are likely to be invaded if the risk takes effect in harm.

*Id.* § 293, at 58.

As to the factor (a), it is clear the law views an individual's interest in not being sued in the wrong county as an important social value. *See Panhandle E. Pipe Line Co. v. Fed. Power Comm'n,* 324 U.S. 635, 639, 65 S.Ct. 821, 823–24, 89 L.Ed. 1241, 1246 (1945) ("Venue relates to the convenience of litigants." (citing *Neirbo Co. v. Bethlehem Shipbuilding Corp.,* 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167 (1939)); *State ex rel. Klabacka v. Charles,* 36

Wis.2d 122, 152 N.W.2d 857, 861 (1967) (stating the purpose of venue statutes "is to prevent the hardship and inconvenience to which a defendant may be subjected by having to defend himself in the county in which he is not a resident"). Yet, it is reasonable to believe that this value is greater when the incorrect venue is at a great distance from the debtor's residence. *See Dutton v. Wolhar*, 809 F.Supp. 1130, 1139 (D.Del.1992) (one purpose of venue provision under FDCPA was to prevent collection actions in forums "located at great distances from debtors' residences").

As to factors (b) and (d), there was no evidence presented at trial as to either the chance of someone being sued in the wrong county using the USPS city-county directory procedure, or the number of persons at risk of being sued in the wrong county using this procedure—i.e., how many people live in Iowa cities that span the border between two counties. Notwithstanding, we must base our inquiry into whether substantial evidence supports the district court's finding that Chrysler's procedure was reasonably adapted to avoid suing consumers in the wrong county on the evidence that was actually presented at trial, and we cannot speculate about the number of consumers that could be adversely affected or the chances of a consumer's interest would be invaded simply because we may conceive that some consumers could be adversely affected by the procedure. Our role is not to search for evidence to defeat the district court's judgment, but rather, to broadly construe the court's findings and view the evidence in the light most favorable to *upholding* the judgment. *Johnson*, 637 N.W.2d at 177. However, what we do know from the evidence is that the procedure has been used "hundreds" of times by Chrysler in the past without knowledge that it adversely affected the venue rights of litigants. This evidence would support a finding that the chance of invading the protected interest and the number of people likely to be adversely affected is minimal.

The final factor in considering reasonableness is the extent of the potential harm. Restatement (Second) of Torts § 293, at 58; *Vaughn v. Ag Processing, Inc.*, 459 N.W.2d 627, 634 (Iowa 1990) (holding factor to consider in determining whether employer took "reasonable steps to remedy" discrimination in the workplace was the gravity of the harm). In considering this factor, it is important to recognize that the potential error at issue in this case, if it occurs, only means the consumer is required to defend the lawsuit in a neighboring county. *See Dutton*, 809 F.Supp. at 1139 (purpose of venue provision under FDCPA was to prevent collection suits in forum "located at great distances from debtors' residences" and to "prevent forum abuse"). Furthermore, the potential error mostly affects consumers who live relatively close to the neighboring county. Thus, any additional distance from a consumer's residence imposed on a consumer by the error will not be significant, and in some cases, the neighboring county may even be a more convenient forum for the consumer. *See* Iowa R. Civ. P. 1.808(1) ("An action brought in the wrong county may be prosecuted there until termination, unless a defendant, before answer, moves for change to the proper county."); *see also Dove v. Gold Kist, Inc.*, 314 S.C. 235, 442 S.E.2d 598, 600 (1994) ("A court sitting where venue is improper may nevertheless render judgment provided the party who possesses the venue right consents, either expressly or impliedly." (Citation omitted.)). Additionally, once the error is discovered, a prompt and fair procedure exists under our rules of practice to correct the error and provide compensation to the consum-

er for any trouble and expense imposed. *See* Iowa R. Civ. P. 1.808(1) (upon motion, court is required to change venue when a petition is filed in the wrong county and may award compensation for the defendant's trouble and expense). In fact, it is fair to say that a simple phone call from one attorney to the other attorney would normally be enough to correct the problem. Thus, from a practical standpoint, the potential harm of being sued in an adjoining county is minimal, if it exists at all. This means the procedure designed to avoid this particular error[4] need not be highly stringent in order to be deemed "reasonably adapted to avoid the error."

Moreover, reasonableness must be evaluated, based on the circumstances as the actor knew them at the time, not with the benefit of hindsight. *See* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 31, at 170 (5th ed. 1984) ("The actor's conduct must be judged in the light of the possibilities apparent to him at the time, and not by looking backward 'with the wisdom born of the event.' "). At trial, there was nothing to suggest that the USPS directory was not a reliable document at the time it was used. The past success of the procedure used by Chrysler is evidence that the district court could rely upon to conclude that it was reasonably adapted to avoid suing a consumer in the wrong county.

## IV. Conclusion

We conclude substantial evidence exists to support the district court's findings that the petition in this case was filed in the wrong county unintentionally, as the result of a bona fide error. Substantial evidence also exists that the action was filed in the wrong county notwithstanding the mainte-

nance of a procedure reasonably adapted to avoid this error. All the elements of the bona fide error defense under Iowa Code section 537.5201(7) are satisfied. Therefore, Chrysler cannot be held liable for a violation of the consumer credit code. *See* Iowa Code § 537.5201(7). Accordingly, the district court's denial of Bergstrom's counterclaim against Chrysler was correct, and we affirm the district court's judgment and vacate the decision of the court of appeals.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except STREIT, TERNUS, and WIGGINS, JJ., who dissent.

STREIT, Justice (dissenting).

I respectfully dissent. Chrysler's procedures were not "reasonably adapted" to avoid suing defendants in the wrong county. They were doomed to fail. For this reason, I would affirm the court of appeals and reverse the district court.

It is not disputed that Chrysler violated the Iowa Consumer Credit Code when it sued Bergstrom in the wrong venue. The only question is whether Chrysler is liable for its mistake. Ordinarily a creditor is vicariously liable for the unlawful debt collection practices of its agents, including collection attorneys. *Cf. Martinez v. Albuquerque Collection Servs., Inc.*, 867 F.Supp. 1495, 1502 (D.N.M.1994) (interpreting identically worded federal statute). The bona fide error defense, Iowa Code section 537.5201(7), creates an exception to the general rule of liability. To prove its bona fide error defense, Chrysler bore the burden to show it had maintained proce-

---

4. We emphasize that we are not ruling on what may or may not be a procedure reason-

ably adapted to avoid any error other than the error specifically at issue in this case.

dures "reasonably adapted" to avoid suing defendants in wrong venues.

Chrysler's procedures were not "reasonably adapted" to avoid suing defendants in wrong venues. Merely looking at the USPS directory, looking up what county a city is located in, will inevitably fail too often to be "reasonably adapted." Chrysler's attorney's secretary (hereinafter "Chrysler's secretary") testified the directory contained only one county entry for each city listed.[5] This will too often result in the plaintiff filing in the wrong venue, because no small number of Iowa cities are located in two counties. For example, West Des Moines, one of Iowa's most populous cities, is located in both Polk and Dallas Counties. Moreover, the USPS directory alone cannot account for residents of rural areas who, although they are given a mailing address of a nearby town, may, like Bergstrom, live miles away from the city limits and in another county. This is not inconsequential in Iowa, which has ninety-nine counties.[6] Chrysler's procedures were not reasonably adapted to avoid suing debtors in the wrong county; the only result of the directory's use was that suits were filed in the county where city hall happened to be located.

The majority makes much of the fact that Chrysler's secretary testified she had never heard of any problems with using the USPS directory before this case. The majority leaps to the conclusion that Chrysler's procedure "has been used 'hundreds' of times ... without adversely affecting the venue rights of litigants." The majority implicitly assumes Chrysler's debtors (1) all know their venue rights and (2) would always tell Chrysler's secretary when those rights were violated. Given the nature of collection actions, it is equally if not more likely that problems were not recognized or not reported to Chrysler's secretary. The statute, after all, is a remedial consumer protection act designed to protect those who do not or cannot complain.

The mere fact a mistake occurs does not automatically render the creditor's procedures not reasonably adapted to avoid the error. That the legislature saw fit to create the defense means it must cover some mistakes. Chrysler's procedures, however, are not "reasonably adapted" because far too many lawsuits will fall through the cracks; to mix metaphors, Chrysler left the floodgates open when its attorney handed his secretary a USPS directory that was too rudimentary to account for two-county cities or rural residents. Cf. Martinez, 867 F.Supp. at 1503 (holding defendant's bona fide error defense "conclusively fail[ed]"; defendant could not have maintained procedures reasonably adapted to avoid the venue violation which occurred because it "routinely applied the wrong standard in determining where to file suit"). It is not the purpose of the bona fide error defense to shield creditors from liability for systemic errors. Cf. id.

The majority's interpretation of "reasonably adapted" procedures will often leave Iowans without recourse under the consumer credit code—and not just when the creditor violates the venue provision of the act. But see Iowa Code § 537.1102(1) ("This chapter shall be liberally construed and applied to promote its underlying purposes and policies."). This is particularly

---

5. It is important to point out that the directory upon which the majority relies in its substantial-evidence review is not in the record. Our only indication of what the directory might contain comes from the secretary's testimony.

6. Indeed, as many as three of the seven members of this court have mailing addresses containing a city or town that could fall within two counties.

unfortunate given that Iowa remains the only state that denies consumers a private right of action under its consumer fraud act.[7] Procedures that are designed to fail on a widespread basis will be "reasonably adapted," so long as this Court—employing a five-factor balancing test—makes its own policy determination that the violation was really not that bad. In doing so, the majority sweeps away—without discussion—a long line of authority that holds some sort of double-checking mechanism is required for a procedure to be "reasonably adapted." *See, e.g., Thomka v. A.Z. Chevrolet, Inc.*, 619 F.2d 246, 251 (3d Cir. 1980) ("reasonably adapted" procedures require creditors to set up "a special system ... to assure that no initial errors occur, and that a checking mechanism be maintained to catch any errors that slip through the system"); *Gallegos v. Stokes*, 593 F.2d 372, 376 (10th Cir.1979) (similar); *Mirabal v. Gen. Motors Acceptance Corp.*, 537 F.2d 871, 879 (7th Cir.1976) ("Their procedures, although probably designed to provide correct disclosures, did not contain any type of preventative mechanism for catching disclosure errors."), *cert. denied*, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 699 (1978), *overruled on other grounds by Brown v. Marquette Sav. & Loan Ass'n*, 686 F.2d 608 (7th Cir.1982); *In re Webster*, 300 B.R. 787, 798 (W.D.Okla.2003) (similar); *In re Ralls*, 230 B.R. 508, 520 (Bkrtcy.E.D.Pa.1999); *In re Wright*, 11 B.R. 590, 594 (Bkrtcy.S.D.Miss.1981) (similar); *see also Hutchings v. Beneficial Fin. Co.*, 646 F.2d 389, 391 (9th Cir.1981) (following *Thomka*, but finding procedures "reasonably adapted" because creditor hired second employee to double-check first employee's calculations). It therefore runs afoul of the manner in which the legislature has expressly directed us to interpret the statute. *See* Iowa Code § 537.1102(2)(*g*) (directing courts to "[m]ake the law ... more uniform among the various jurisdictions").

One last point is worth mentioning, in light of the majority's repeated insistence that it is merely engaging in substantial-evidence review. In the district court, the fighting issue was not whether Chrysler's procedures were "reasonably adapted" to avoid mistaken filings, but rather whether Chrysler could escape liability if it simply proved its error was unintentional. Chrysler quoted from dicta in *Monahan Loan Service, Inc. v. Janssen*, which opined that a creditor would not be liable if it showed its mistake was "inadvertently drafted, unintentional, or resulted from a bona fide error." 349 N.W.2d 752, 755 (Iowa 1984). The district court agreed, found Chrysler's error was unintentional, and dismissed Bergstrom's counterclaim. This is why the court of appeals spent the bulk of its opinion distinguishing our dicta in *Monahan* to rightly conclude that "proof of the maintenance of procedures reasonably adapted to avoid the error in addition to proof that the error was unintentional ..." was necessary.

This history of the case is important because it shows why the district court focused on whether Chrysler's actions were intentional and did not make any specific legal conclusions or factual findings about what sorts of procedures are reasonably adapted to avoid mistaken venue filings. Indeed, the district court's entire ruling on Bergstrom's counterclaim was:

> [T]he Court finds that plaintiff has established that the filing of the petition in Howard County was not intentional. The evidence solicited by ... a secre-

---

7. *See* Tom Miller, *Give Iowans a Key Consumer Protection Tool*, available at http://www.state.ia.us/government/ag /lat-est_news/releases/jan_2002/Private_Right_rel.htm (last visited Aug. 24, 2005).

tary/receptionist at [Chrysler's law firm], clearly established that it was her direction and intent that this action be filed in the defendant's county of residence. According to reliance upon U.S. Postal records, as well as Department of Transportation records, she incorrectly assumed that the county of residence was Howard.

It should also be noted that Riceville is a unique community in North Central Iowa wherein half of the town is located in Mitchell County and half is located in Howard County. The Court can appreciate some measure of confusion for a Des Moines law firm filing such an action in the wrong county.

When the record is viewed in its entirety, it appears the district court did not analyze the "reasonably adapted" procedures element.[8]

Even if we construe the foregoing as an implicit ruling on the "reasonably adapted" element of the bona fide error defense, however, the district court's conclusion was based upon a faulty premise. Although certainly special, there is nothing "unique" about Riceville; as previously indicated, many Iowa towns straddle a county line, and many rural Iowans have mailing addresses of a town in another county. The majority repeats this error when it opines without support—in the record or

otherwise—that "the number of people likely to be adversely affected is minimal." There simply is not substantial evidence to support the casual observations of the district court and now the majority.

The district court's findings also lack evidentiary support in the record insofar as they imply Bergstrom lived in the "half of the town in Mitchell County." At trial, Bergstrom testified he lived approximately five miles outside the Riceville city limits. He indicated his mailing address was "3199 390th Street, Riceville, Iowa," which clearly shows that he lived in a rural area. Thus when the majority writes that "Bergstrom resided just outside Riceville" and "Bergstrom lives in the portion of Riceville that lies in Mitchell County," it falls into the trap first laid by the trial court.

In sum, it is plain that Chrysler's procedures are not "reasonably adapted" to avoid the sorts of venue mistakes that occurred here. In the absence of the bona fide error defense, Bergstrom was entitled to judgment on his counterclaim. *See Monahan,* 349 N.W.2d at 754.

TERNUS and WIGGINS, JJ., join this dissent.

---

**8.** Chrysler strategically reframed the issue on further review. At oral argument, Chrysler suggested that because the district court set forth the text of the statute in its ruling it therefore *impliedly* determined Chrysler had proved it had maintained the "reasonably adapted" procedures. Although in some cases we may assume the district court impliedly ruled on an issue without discussing it, *cf. Meier v. Senecaut,* 641 N.W.2d 532, 539–40 (Iowa 2002), we ought not presume findings of fact when it is apparent the district court did not make them. *See, e.g., Sager v. Farm Bureau Mut. Ins. Co.,* 680 N.W.2d 8, 15 (Iowa 2004).

A close reading of the majority's decision reveals it implicitly accepts Chrysler's reframing of the issues. The silent shift the majority now makes is important—especially given its repeated insistence that we ought to defer to

the district court's factual findings. Yet what are these factual findings? The majority does not say what they are because they do not exist.

When one recognizes the procedural posture of the case, it also becomes apparent that the majority asks the impossible of Bergstrom. For example, the majority faults Bergstrom for not presenting evidence at trial regarding the probability a debtor might be sued in the wrong county when the creditor uses the USPS directory, even though what constituted "reasonably adapted" procedure was not the fighting issue in the district court. (It is also wrong for two other reasons: (1) Chrysler, not Bergstrom, bore the burden of proof to establish its affirmative defense and (2) it would be wrong to expect Bergstrom to engage in a statistical analysis that finds no textual basis in the statute.)