# IN THE COURT OF APPEALS OF IOWA

No. 18-1306
Filed September 11, 2019

**DEAN THORSON,**
    Plaintiff-Appellee,

**vs.**

**THOMAS HANSEN and JEANETT HANSEN,**
    Defendant-Appellants.

_____

Appeal from the Iowa District Court for Winneshiek County, Linda M.

Fangman, Judge.

Defendants appeal an order and judgment against them. **AFFIRMED.**

Erik W. Fern of Berry Law Firm, Lincoln, Nebraska, and Andrew J. Casper

of Putnam & Thompson Law Office, P.L.L.C., Decorah, for appellants.

James A. Garrett of James Garrett Law Office, Waukon, for appellee.

Considered by Mullins, P.J., Bower, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**BOWER, Judge.**

Thomas and Jeanett Hansen appeal a trial court order finding in favor of Dean Thorson in a conversion and breach-of-contract action concerning a hay crop and farm-rental agreement. The Hansens claim the trial court erred in denying their motion for new trial because Thorson made knowing material misrepresentations during trial that prejudiced the Hansens and by making a mistake of fact and law as to the date of conversion. We find the court did not abuse its discretion in denying the motion for new trial and did not make a mistake of fact or law. We affirm.

## I. Background Facts & Proceedings

The Hansens own a farm in northeast Iowa. Thorson has worked in various capacities on the Hansens' farm since the 1990s. Until 2009, Thorson primarily cash rented the Hansens' land. Beginning in 2009, Thorson leased agricultural land from the Hansens under a variety of oral rental agreements. The fields leased or otherwise farmed through the parties' association were commonly known as the North 40, South 31, East 40, and West 16. With respect to the acres farmed under crop-share agreements, where the parties divided the crop after harvest instead of Thorson paying rent, Thorson was obligated to apply fertilizer and nutrients to maintain the soil for the future. The acres subject to custom farm agreements—where the Hansens paid Thorson for his labor and retained the entire harvested crop—obligated the Hansens to fertilize the land.

In 2009, the Hansens began converting their farm to produce organic crops. Until 2011, the Hansens had a contract to grow organic peas for Sno Pac Foods (Sno Pac). After a conflict between the Hansens and Sno Pac, Thorson included

some of the Hansens' land in his own contracts with Sno Pac. Thorson took over the organic-certification work for the Hansens' land.

In 2012, the parties had a crop-share agreement for hay grown in the East 40 field. After the second[1] cutting and baling of hay, Thorson left the large round bales of hay on the Hansens' land. The Hansens moved all the bales from the field to a shed, though the number of bales was in dispute. Thorson was told he could get them when he wanted. In November, he asked for his half of the bales from the second cutting; the Hansens advised Thorson they were keeping the bales. Thorson asked again for the bales in late April 2013 to feed his cattle and was again refused. Thorson did not purchase hay but instead resorted to foraging his cattle on an already-planted field. In the summer of 2013, the Hansens and Thorson had an argument about the 2012 hay with Thorson indicating he considered it stolen. Although the parties discussed Thorson recouping the hay from the 2013 or 2014 crops, Thorson did not get his hay.

For the 2015 growing season, the parties contracted for hay and an oat-hay mixture to be grown and harvested on the North 40 and East 40 fields, with the crops to be divided evenly. A crop-share arrangement for organic corn was agreed to on the South 31. Finally, the Hansens hired Thorson to prep the West 16 to grow organic peas for Sno Pac. The parties knew Sno Pac might not accept the Hansens' land in Thorson's contract for 2015. Thorson testified they reached a contingent agreement by which he could seed the field with grass and oats for

---

[1] Thorson testified he had three cuttings of hay on the East 40 in 2012. He received his half portion of the first and third cuttings. The first cutting has the biggest yield and highest nutrition, but Thorson testified the second cutting is more digestible.

pasturing because he had applied nutrients to the field; Jeanett testified no agreement was reached because she had not decided what to do with the field if no peas were planted.

In the spring of 2015, the relationship between Thorson and the Hansens imploded. Sno Pac's internal policies had changed for the 2015 planting, requiring the company to contract directly with property owners. Sno Pac did not opt to contract with the Hansens but maintained its contract with Thorson. Thorson knew by March 11 when he signed his own contract with Sno Pac that Sno Pac would not include the Hansens' land, and he left the Hansens a voice mail informing them their land was not included in his contract. In April, Thorson seeded the East 40 with oat hay. Around April 19, Thomas informed Thorson during a phone call that they had found someone else to plant the West 16 and cut hay and spread manure on the North 40. Thorson argued that was not the deal they had made and, after Thomas said they were contracting with the other farmer, Thorson said "Fine, that's it then." Thorson considered this telephone call to constitute the Hansens' termination of their contracts as to all the fields.

A couple days after the phone call, Thorson sent a document to the Hansens he considered to be a bill for what the Hansens owed him. The document listed the inputs for fertilizer and seed applied to the Hansens' fields and listed seventy bales of hay valued at $300 per bale. The Hansens repeatedly called and sent letters in May and June to Thorson asking if he was terminating their contracts or if he intended to continue to work on their farm. Thorson did not answer the ten phone calls or open the first three letters, only opening the final letter on June 13. In the June 13 letter, the Hansens stated Thorson's failure to answer previous

inquiries as requested was deemed to be a termination of their contract and told Thorson not to enter their property "at any time for any reason."

In March 2016, Thorson filed suit against the Hansens, claiming conversion for the 2012 hay and breach of contract relating to the leasing arrangement. Thorson claimed damages for the value of the hay converted[2] and the cost of the fertilizer, nutrients, and seed the Hansens benefited from due to the lease termination. Thorson requested a total recovery of $36,171.22. The Hansens answered, denying the conversion claim and claiming Thorson unilaterally terminated the rental agreement. The Hansens also counterclaimed, asserting Thorson breached the contract to prepare land for organic certification, to plant organic corn, and to plant and harvest hay. The Hansens claimed damages of $26,350.00, plus damages for lost hay.

In May 2017, the Hansens filed a motion for partial summary judgment. They admitted to owing Thorson forty bales of hay and proposed a rate of $127.80 per bale of hay as valued on the August 2012 hay market report.

On February 14 and March 23, 2018, the matter was tried to the court. The court heard testimony from Thorson, both Hansens, a neighboring farmer who has farmed the Hansens' land since 2015, and the county sheriff. The court entered judgment on April 19 in favor of Thorson, awarding him $30,518.40 for converted hay and input costs. The court dismissed the Hansens' counterclaims.

The Hansens filed a motion for new trial and a motion to amend and enlarge, in part alleging Thorson knowingly offered false evidence at trial. The Hansens

---

[2] In the petition, Thorson claimed seventy bales of hay converted at a value of $300 per bale.

supplemented the motions with information obtained after trial relating to yields and the value of the hay. A hearing was held on the motions on June 27. The court denied the motion for a new trial and issued an order with additional findings on July 20. In both the original ruling and the amended order, the district court specifically made credibility findings that Thorson was credible and the Hansens were not.

The Hansens appeal, claiming the district court abused its discretion in denying their motion for a new trial, determining the date of civil conversion, and finding substantial evidence supported a damages award.

## II.    Standard of Review

If based on discretionary grounds, a district court's denial of a new trial is reviewed for abuse of discretion. *WSH Props., L.L.C. v. Daniels*, 761 N.W.2d 45, 49 (Iowa 2008). An abuse of discretion occurs "when the district court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Channon v. United Parcel Serv., Inc.*, 629 N.W.2d 835, 859 (Iowa 2001) (citation omitted). "A ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law." *In re Gianforte*, 773 N.W.2d 540, 544 (Iowa 2009) (citation omitted). "The district court's findings of fact have the force of a special verdict and are binding on us if supported by substantial evidence." *Chrysler Fin. Co. v. Bergstrom*, 703 N.W.2d 415, 418 (Iowa 2005); *see also* Iowa R. App. P. 6.904(3)(a) ("Findings of fact in a law action . . . are binding upon the appellate court if supported by substantial evidence."). "Evidence is substantial if a reasonable person would accept it as adequate to reach a conclusion." *Chrysler Fin. Co.*, 703 N.W.2d at 418. Assessing

the credibility of witnesses is the responsibility of the fact finder. *Smidt v. Porter*, 695 N.W.2d 9, 22 (Iowa 2005).

### III. Analysis

First, the Hansens request a new trial alleging Thorson made "materially false statements" and perjured himself to the court, arguing that in a credibility-dependent case prejudice is clear. The court based its valuation of the converted hay on the value of hay as proposed by Thorson; the Hansens argue the hay was not certified organic in 2012 and Thorson knowingly misled the court. Second, the Hansens claim the trial court committed an error of law and mistake of fact in its determination of the date of civil conversion.

**A. New trial.** Iowa Rule of Civil Procedure 1.1004 delineates the grounds upon which a court may grant a new trial. These grounds include misconduct of the prevailing party, newly discovered evidence, and errors of law during the proceedings or mistakes of fact by the court. Iowa R. Civ. P. 1.1004(2), (7), (8). "Trial courts have broad but not unlimited discretion in ruling on motions for new trials. We do not favor motions for new trial based on newly discovered evidence. We will not disturb the trial court's ruling unless the evidence clearly shows the court has abused its discretion." *Benson v. Richardson*, 537 N.W.2d 748, 762 (Iowa 1995) (citations omitted).

The Hansens allege Thorson made material false statements to the court regarding organic certification and a shooting incident. Because the district court's opinion was largely based on credibility findings, the Hansens claim the false statements were clearly prejudicial and a new trial is warranted.

*Certification.* The Hansens challenge whether the converted hay was certified as organic.[3] This challenge has two implications: first, the value of the converted hay; and second, Thorson's reliability as a witness. The Hansens argue if Thorson is not a reliable witness as to the organic certification, he cannot be trusted as to his other testimony, warranting a new trial.

At trial, Thorson testified the hay was organic and the field had been chemical free since July 2011. Thomas testified the hay was not certified organic and there was no reason to do so as both parties used the hay to feed their own cattle, which were not certified organic.

Thorson provided a field history at trial for each of the four fields Thorson farmed for the Hansens. The history, filled out by Thorson to file with the organic certifier, showed the East 40 was certified as organic in 2012. The Hansens were provided with the field history at least one week prior to the first day of trial. The Hansens did not object to admission of the exhibit at trial. Thorson testified as to the field history on the first day of trial, February 13.

Despite the organic nature of the fields being an issue in the case and relevant to their ongoing farming operation, the Hansens did not request the records for their own fields from the organic certifier prior to trial. Neither did they seek the records following Thorson's testimony on February 13 to use as impeachment at the second day of trial on March 23. Instead, they waited until

---

[3] Any other organic certifications do not bear on the district court's decision. Moreover, it appears the Hansens left any organic certification work in Thorson's hands rather than seeking certification on their own for their land.

after the court's final judgment to request the information.[4] The Hansens now seek a new trial based on the statements they claim were knowingly false, with the intent of impeaching Thorson with evidence they obtained after trial.

While our rules allow a new trial based on newly discovered material evidence, it has to be evidence "which could not with reasonable diligence have been discovered and produced at the trial." Iowa R. Civ. P. 1.1004(7). Additionally, the new evidence must be "material and not merely cumulative or impeaching" and "probably change the result if a new trial is granted." *Benson v. Richardson*, 537 N.W.2d 748, 762 (Iowa 1995). "Verdicts should not be set aside lightly and the court, in granting a new trial, must be sure there exists sufficient cause to support the exercise of such discretion." *Wilkes v. Iowa State Highway Comm'n*, 186 N.W.2d 604, 607 (Iowa 1971). "Every litigant is entitled to a fair trial, but only one." *Id.*

The Hansens had the opportunity to challenge Thorson's claims during trial and failed to do so. We find the district court did not abuse its discretion in denying the Hansens' motion for a new trial based on impeaching evidence that could have been produced at trial with reasonable diligence.

*Shooting allegations.* The Hansens make additional allegations that Thorson materially misrepresented a shooting report. We find the Hansens' allegations misconstrue Thorson's testimony, are not material to the issues on appeal, and are without merit.

---

[4] We do not agree with the district court's statement calling the issue of whether the hay was organic a "red herring." The court awarded damages of $300 per bale, not $300 per ton, placing a premium on the hay above the conventional hay price range.

**B.** **Date of conversion.** The date the conversion occurred is relevant to the valuation of the converted hay. Thorson claims the conversion occurred in April 2013—the final time he attempted to get his share of the 2012 hay. The Hansens argue the conversion occurred either in July 2012, when they moved the hay, or November 2012, the first time Thorson requested the hay and was denied. The petition stated, "The defendants intentionally misappropriated or took dominion and control over the 70 large round bales of hay owned by plaintiff in the fall of 2012." In its amended order, the court specifically noted the date of conversion was a finding of fact within the court's discretion, and it found the conversion occurred the third and final time Thorson requested his share of the hay crop—April 2013.[5]

"The essential elements of conversion are: (1) ownership by the plaintiff or other possessory right in the plaintiff greater than that of the defendant; (2) exercise of dominion or control over chattels by defendant inconsistent with, and in derogation of, plaintiff's possessory rights thereto; and (3) damage to plaintiff." *In re Estate of Bearbower*, 426 N.W.2d 392, 394 n.1 (Iowa 1988). Conversion occurs at the time the property is taken from the owner causing damages. *See Duncan v. Ford Motor Credit*, No. 17-1122, 2018 WL 3060265, at *2 (Iowa Ct. App. June 20, 2018). "The general rule is that the measure of damages for conversion is the fair and reasonable market value of the property at the time of the taking." *Murray v. Conrad*, 346 N.W.2d 814, 821 (Iowa 1984).

---

[5] During a hearing on the Hansens' motion to enlarge and amend, the court specifically noted the Hansens had not provided information for the price of hay in the fall of 2012. The court was constrained to the exhibits provided when making its decision and found the April 2013 prices to be the most relevant pricing information presented.

Thorson included the specific quantity of hay and his valuation per bale in his petition filed in 2016. At the trial in 2018, the valuation information provided to the court included prices for August 2012, April 2013, and August 2013. Neither party submitted pricing information for November 2012. The court found the August 2012 hay prices submitted by the Hansens were not persuasive, as the Hansens had not yet refused to give Thorson his share of the hay. The trial court found the conversion did not occur until the Hansens asserted their rights to the hay above the rights of Thorson. The district court determined the taking occurred on the final time Thorson requested the hay bales, April 2013.

The April 2013 pricing was during the period where Thorson incurred damages from the Hansens' conversion of his hay. Both parties testified about Thorson's acquisition of cattle in 2012, to which he planned to feed the converted hay. The district court found it "unbelievable that [Thorson] would turn down hay which was due to him on multiple occasions" at a time he had to forage his cattle on a planted field because he did not have enough to feed them in the spring of 2013.

At the hearing on the motion to enlarge and amend, the court expressly noted it had to rely on the evidence presented during the original trial for valuation, regardless of whether the conversion occurred in November or in April. The court found the April 2013 pricing to be the most relevant of the evidence before it. We agree with the court and find under the circumstances of this case, the court did not make a mistake of fact or law in determining the date of conversion.

**AFFIRMED.**